UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
Empire Motor Show LLC,                  :
                                        :
       Plaintiff,               :         05 Civ. 10611
                                        :
       -against-                :
                                        :         **MEMORANDUM OPINION**
Kruse, Inc., d/b/a Kruse International, :         **& ORDER**
                                        :
       Defendant.               :
------------------------------------------------------X

**Hon. Harold Baer, Jr., District Judge:**

      Plaintiff Empire Motor Show LLC ("Empire") brought this action for, *inter alia*, breach of contract, unjust enrichment and fraud against defendant Kruse, Inc. ("Kruse") in the Supreme Court for New York County. On December 16, 2005, Kruse removed the action to this Court.[1] Plaintiff now moves for an order of attachment, and both parties cross-move for summary judgment. Oral argument on the motions was held on August 1, 2006. For the reasons set forth below, plaintiff's motion for an attachment is denied, and both parties' cross-motions for summary judgment are also denied.[2]

## FACTUAL BACKROUND

      The facts set forth below are taken from the affidavits submitted in connection with these motions. Empire, through its principals David Workman ("Workman") and Bradford Rand ("Rand"), contracted with Kruse to conduct an antique automobile auction in Manhattan. Kruse is an Indiana-based auction company specializing in collector automobiles. Workman and Rand intended to promote the event in connection with a "luxury lifestyle expo" (an exhibition of luxury consumer goods) that they conceived and organized.

      The auction, which occurred on September 9-11, 2005, was not as successful as anticipated. Unsurprisingly, both parties blame the other for the auction's failure. The

---

[1] Kruse has also counterclaimed, seeking an accounting.
[2] Defendant has also moved for leave to amend its answer to plead non-compliance with N.Y. General Obligations Law Section 15-301 as an affirmative defense. See N.Y. Gen. Oblig. Law § 15-301 (enforcing contractual clauses barring oral modifications). Plaintiff does not oppose this motion. Therefore, defendant's motion to amend its answer is granted on consent.

1

auction generated approximately $4.3 million in sales, and produced gross revenues of approximately $340,000. Almost all of the revenues were retained by Kruse, except for approximately $12,000 in "consignment fees" currently held by Empire. Empire brought this action to recover what it contends is its rightful share of the auction proceeds.

## DISCUSSION

### A. Attachment

Rule 64 provides that prejudgment attachment shall be available in federal courts pursuant to the law of the state in which the district court is located. See Fed. R. Civ. P. 64. New York C.P.L.R. Section 6201 provides, *inter alia*, that an order of attachment "may" be granted when a defendant, "with intent to defraud his creditors or frustrate the enforcement of a judgment that might be rendered in plaintiff's favor, has . . . disposed of, encumbered or secreted property, or removed it from the state or is about to do any of these acts. . ." NY CPLR § 6201(3). In addition, plaintiff must show a probability of success on the merits. See NY CPLR § 6212(a).

Empire and Kruse entered into a written agreement in May 2004 governing the conduct of the auction (the "Auction Agreement"). In the subsection of the Auction Agreement labeled "Representation and Warranties by Kruse," the agreement provided: "Kruse owns the Auction escrow account according to the laws of the State of New York and New York bank escrow account whereby Empire will be beneficiaries of their account share." (Rand Aff., Ex. 2, § 4(2)(a)). This poorly drafted provision is the primary basis for Empire's proposed attachment. According to Empire, Kruse was obligated to establish an escrow account in New York to hold the revenues from the auction subject to splitting those monies between the parties. Kruse, however, maintains that the escrow account was merely intended to hold the monies due to sellers of the automobiles (the "consignors"), pending finalization of the auction sales. Kruse contends that it attempted to set up such an account in New York, but found that it was able to process the sales more quickly by using its customary bank in Indiana. Kruse asserts that all funds due sellers have been distributed, and therefore nothing remains in escrow.

In my view, the escrow account provision in the Auction Agreement is ambiguous. While the agreement does appear to contemplate a New York escrow

2

account, Kruse's explanation as to why it ultimately moved the funds to Indiana is reasonable, and there appears to be no evidence of an intent to defraud.

### B. Summary Judgment

Kruse has moved for partial summary judgment dismissing plaintiff's complaint insofar as it seeks more than $42,338 (the amount Kruse admits it owes Empire).[3] Plaintiff has cross-moved for summary judgment on its breach of contract claim. Plaintiff asserts that it is entitled to judgment as a matter of law in the amount of $440,622 (more than was actually collected in revenues from the auction).

The Auction Agreement was executed by the parties in May of 2004. Afterward, through oral communications, emails, and the exchange of at least one "marked-up" revision, the parties discussed changing certain terms of the agreement.[4] However, none of these changes were ever reduced to a signed writing. The Auction Agreement contained a provision that states: "no modification of this Agreement, and no waiver of any of its terms or conditions, shall be effective unless made in writing and duly executed by both parties." (Rand Aff., Ex. 2 § 4(9)). Pursuant to N.Y. General Obligations Law Section 15-301, a written clause barring subsequent oral modifications is enforceable unless the parties have partially performed pursuant to the oral modification and such performance is "unequivocally referable" to the modification. Merrill Lynch Interfunding, Inc. v. Argenti, 155 F.3d 113, 122 (2d Cir. 1998) (internal quotation omitted). Both parties rely on the terms of the Auction Agreement as written.[5]

The Auction Agreement, in pertinent part, provided that both parties would collect consignment fees from potential sellers in amounts ranging from $100-$300. (Rand Aff., Ex. 2 § 1(2)(iii)). The amount of such fees was subject to modification if both parties consented. (Id.) The agreement provided that all consignment fees would

---

[3] However, Kruse concedes that Empire has raised an issue of fact with regard to the amount of consignment fees actually collected, and that therefore plaintiff may be entitled to as much as $72,000. (Reply Memorandum in Support of Defendant's Cross-Motion for Summary Judgment, dated June 26, 2006 at 5).

[4] For example, the Auction Agreement states that the auction would occur on April 1-3, 2005, but the auction was actually held in September 2005.

[5] Plaintiff asserts that, although it does not "concede" that the written agreement was never effectively modified, it "relies solely on the original, unmodified contract language" in support of its motion for summary judgment. (Plaintiff's Reply Memorandum of Law in Support of Motion for Order of Attachment, dated June 1, 2006, at 3).

3

ultimately accrue to Kruse, up to a limit of $50,000. (Id.) In addition, the parties agreed to collect an 8% "commission" from sellers on consummated sales, as well as an 8% "premium" from buyers. (Id. § 1(3)(vi)). These rates could also be changed subject to both Empire's and Kruse's approval. (Id. § 1(11)). The agreement stated that Kruse would be paid 4% of the "gross auction total," plus a $65,000 flat fee and 100% of the consignment fees collected. (Id. § 3(1)).

The main points of contention are as follows. Empire contends that Kruse unilaterally lowered the 8% fee it was obligated to collect from buyers and sellers, perhaps to increase its standing with longstanding customers. Kruse contends that Empire unilaterally reduced consignment fees and/or underreported the amount of consignment fees actually collected.[6] It is apparent that premiums, commissions and consignment fees were reduced. However, it is unclear whether both parties consented to these reductions. Kruse asserts that "[i]n all cases . . . the decision to reduce commissions was made jointly by Empire and Kruse. . ." (Kruse Dec. ¶ 13(d)). In response, Empire asserts "[w]hen considered in conjunction with defendant's requested entitle[ment] to full compensation, this statement [(i.e., that Empire consented to reductions in commissions and premiums)] is nothing short of absurd." (Rand Reply Aff. ¶ 5). Thus, a material issue of fact exists as to whether Empire and Kruse knowingly consented to reduce buyers' and sellers' fees. Therefore, neither Empire nor Kruse is entitled to judgment as a matter of law.[7]

Finally, Kruse has moved for summary judgment on plaintiff's additional claims: for conversion, unjust enrichment, constructive trust, and fraud. These claims largely concern, and are an integral part of, the same disputed issues of fact addressed above. Kruse's liability will turn on: 1) whether the Auction Agreement was effectively amended; 2) whether a binding contract governed all aspects of the parties' relations; 3) whether the parties agreed to reductions in commissions, premiums and consignment

---

[6] In an "accounting" provided to Empire before this suit was filed, Kruse claimed it was entitled to $155,000 in consignment fees. However, it now concedes that this figure was in error, and contends that it is entitled to $50,000 in consignment fees.

[7] Empire also alleges that Kruse breached the Auction Agreement by, *inter alia*, failing to generate sufficient consignments and by failing to conduct the auction fairly. Material issues of fact exist as to these alleged breaches as well.

fees; and 4) whether the Auction Agreement required Kruse to maintain Empire's share of the auction revenues in escrow.

In support of its claim for fraud, Empire alleges that Kruse made material misrepresentations regarding its preparation for and operation of the auction, and conducted the auction in a manner intended to benefit itself at the expense of Empire. (See, e.g. Compl. ¶¶ 35-37; Rand Aff. ¶¶ 10-11). Here again the relevant facts are in dispute. In sum, myriad issues of fact prevent me from granting summary judgment to either party. Therefore, the cross-motions for summary judgment are denied.

## CONCLUSION

For the reasons set forth above, plaintiff's motion for an order of attachment is DENIED. Plaintiff's and defendant's cross-motions for summary judgment are also DENIED, there are material issues of fact - galore. The non-jury trial of this action will commence on September 22, 2006. The Clerk of the Court is directed to close these motions and to remove them from my docket.

**SO ORDERED.**

**August 11, 2006**
**New York, New York**

U.S.D.J.